KC **FILED**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAR 14 2006

# United States Bankruptcy Court
NORTHERN DISTRICT OF ILLINOIS
219 S Dearborn Street
Chicago, IL 60604

**Kenneth S. Gardner**, Bankruptcy Clerk

Date _____ March 14, 2006 _____

Michael Dobbins, Clerk
United States District Court
Northern District of Illinois
219 S Dearborn Street
Chicago, IL 60604

Case Number _____ 06C273 _____

Case Name _____ John Gunartt _____

Notice of Appeal Filed _____ 12/30/2005 _____

Appellant _____ John Gunartt _____

Dear Sir:

Pursuant to **Bankruptcy Rule 8007** transmitted herewith is the Record on Appeal.  The Record on Appeal consist of:

| | | |
|---|---|---|
| ☐ Transmittal Letter and Civil Cover Sheet | ✔ | Supplemental to the Record |
| ☐ Designation | ☐ | Notice of Appeal |
| ☐ Statement of Issues | ☐ | Copy of Documents Designated |
| ☐ Transcript of Proceeding | ☐ | Exhibits |
| | ☐ | Expedited Notice of Appeal |
| | ☐ | Certified Copy of Docket Sheet |

Additional Items Included

☐ _____

1    Total Volumes Transmitted

The following items will be transmitted as a supplemental to the Record on Appeal

✔   Transcript of proceedings dated 12/22/2005

Previous D C Judge _____ Kennelly _____     Case Number _____

By Deputy Clerk _____ LaToya Henderson

1         IN THE UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3

4   JOHN GUNNERT,                    )   No. 05 B 25498
                                     )   Chicago, Illinois
5                                    )   December 22, 2005
                          Debtor.    )   9:30 a.m.
6

7

8             TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JACQUELINE COX
9

10  APPEARANCES:

11  For the Debtor:                Mr. William Jamison

12  For Fifth Third Bank:          Mr. Gerald Shapiro

13  For the U.S. Trustee's Office: Ms. Gretchen Silver

14  Interim Chapter 7 Trustee:     Mr. Norm Newman

15

16  Court Reporter:                Carol Matz
                                   U.S. Courthouse
17                                 219 South Dearborn
                                   Room 661
18                                 Chicago, IL  60604.

19

20

21

22

23

24

25

1          THE CLERK:   John Gunnert, 05 B 25498.

2          MR. JAMISON:   Good morning, your Honor.

3   William Jamison, appearing on behalf of debtor

4   John Gunnert.

5          MR. SHAPIRO:   Good morning, your Honor.

6   Gerald Shapiro, appearing on behalf of the

7   secured creditor, Fifth Third Bank.

8          MR. NEWMAN:   Good morning, Judge Cox.

9   Norm Newman.   I've been appointed the Interim

10  Chapter 7 Trustee.

11         MS. SILVER:   Good morning.   Gretchen

12  Silver from the U.S. Trustee's Office.

13         MR. JAMISON:   Your Honor, as you may

14  recall from our previous hearings --

15         THE COURT:   Good morning to all of you.

16         MR. JAMISON:   Good morning.

17         I have attached some additional docu-

18  mentation to my motion and renoticed it up before

19  the Court this morning.   I would request of the

20  Court, if you're so inclined, just pass it for

21  one moment.   I've been advised that the

22  transcript is ready downstairs.   I want to go

23  grab a copy of the order.   And counsel just

24  advised me that he picked up his copy this

25  morning, so mine should be ready as well.

1           MR. SHAPIRO:   Judge, the transcript is

2    ready.   I've gone through it.   I have no objec-

3    tion to counsel picking up the transcript and

4    reading it.

5           THE COURT:   All right.

6           MR. JAMISON:   Thank you, your Honor.

7                        (Whereupon other matters were

8                         heard on the call and the

9                         following further proceedings

10                        were had herein:)

11          THE CLERK:   Recalling 9:30 original

12   motion, John Gunnert, 05 B 25498.

13          MR. SHAPIRO:   Good morning again, your

14   Honor.

15          THE COURT:   Good morning.

16          MR. SHAPIRO:   Gerald Shapiro on behalf

17   of Fifth Third Bank.

18          MS. SILVER:   Gretchen Silver from the

19   U.S. Trustee's Office.

20          MR. NEWMAN:   Norm Newman, Interim

21   Chapter 7 Trustee.

22          MR. JAMISON:   Good morning, your Honor.

23   William Jamison on behalf of the debtor, John

24   Gunnert, who is present here with me today.

25          THE COURT:   All right, let's proceed.

1          MR. JAMISON:  Okay.  Your Honor, this

2     is, once again, our renoticed motion essentially

3     seeking to vacate the order converting this

4     Chapter 11 proceeding to a proceeding under

5     Chapter 7.  In our previous court appearance the

6     Court had requested that we submit some documen-

7     tation to the Court supporting our position.  We,

8     obviously, cited case law in our motion, but we

9     did want to give the Court more to hang its hat

10    on.  What we did was tender to your Honor copies

11    of the appraisal via courtesy copies to your

12    chambers a couple of days ago, along with an

13    amended copy of the motion.  We also tendered

14    copies of the leases that we have pending right

15    now on this commercial property and two contracts

16    which we have for the sale of certain units that

17    was delivered in our package to your Honor.

18          Those things were given because we

19    think these things are central to him reorganiz-

20    ing.  What Mr. Gunnert is attempting to do is to

21    sell units.  We have six fully completed

22    condominium units.  Those units are valued at

23    $810,000.  It's secured by a first priority

24    mortgage by Fifth Third Bank.  They assert a

25    claim at present as about $753,000, is what I

1    recall counsel initially telling what their claim

2    was.

3            Though we do not concede that amount,

4    we attached to our motion a payoff statement or

5    receipt -- excuse me -- a statement from Fifth

6    Third which was about $621,000.  Counsel said

7    that doesn't include interest and attorneys' fees

8    so I requested he put a proof of claim on file so

9    we can address that, and he said he would

10   subsequently.

11           Your Honor, our first objection was

12   that the notice on this motion was short.  He was

13   only given eight days within which to respond to

14   this motion.

15           I did procure a copy of the transcript

16   and have given it a cursory review.  I do not see

17   where his prior counsel actually objected to the

18   shortened notice, but I believe the impetus and

19   the responsibility of moving on a motion on short

20   notice is on counsel, not so much whether you're

21   objecting but not so much whether his prior

22   counsel objected.

23           I cited In re Sandra Cotton, 865 BR

24   163, which says that the moving party must

25   advance certain and special circumstances that

1    would justify shortening notice.  My review of

2    their motion certainly didn't show any special

3    circumstances, and even in reviewing the

4    transcript I do not see where they asserted any

5    special circumstances that would justify a

6    shortened notice.  Noticed counsel did not object

7    to it being -- to it proceeding on a shortened

8    notice, your Honor.  But, notwithstanding, I

9    don't believe they met their burden in going

10    forward in that manner.

11            Secondly, your Honor, they're arguing

12    to convert under 1112(b).  Essentially what

13    their -- their claim is that there is a diminu-

14    tion in value.  It's remiss throughout their

15    pleadings that this has declined in value,

16    there's a loss, this isn't feasible.

17            These are properties that are ready for

18    sale.  There is no diminution in value.  They

19    offer no evidence to diminution in value other

20    than the blanket statement that there is

21    diminution in value.  What we have given the

22    Court is proof that these properties have value

23    with these appraisals that exceed their claim.

24            Now, the appraisal that we submitted to

25    the Court is only for one of the properties.  One

1   of the properties is sufficient to pay off their

2   claim.  We've got other properties.  We've got

3   two leases for commercial units right now at

4   $3,000 a month that we're just waiting to sign.

5   They haven't been signed, obviously, because

6   we're not sure where we are with regard to this

7   Chapter 11 proceeding.  But we've got H & R Block

8   and we've got an Austin Market.

9            Now, your Honor, I'm very familiar with

10  this area.  I grew up in the Austin area.  I know

11  it's an upcoming and developing area.  We've got

12  two tenants that are active about it, and they've

13  been inundating my client with calls wanting to

14  know can they get these leases in this unit.

15           In addition to the commercial property,

16  above that I believe are eight residential units.

17  Now, those units are not completed.

18           MR. SHAPIRO:  Nine.  Excuse me.

19           MR. JAMISON:  Excuse me.  There are

20  nine residential units.

21           Now, those units are not completed.

22  They are approximately 60 percent completed.  Our

23  position would be that we would like to -- we're

24  going to complete two of those and really just

25  sell them as models, your Honor.

1          But my point is that there is

2     sufficient -- there's a equity cushion here for

3     Fifth Third Bank.   There's more than enough

4     assets in this estate to pay off all creditors,

5     including unsecured creditors, at 100 percent.

6     We've got contracts pending right now.   Closing

7     on those two contracts alone, we imagine the net

8     will be approximately 250,000, which we would be

9     tendering to the secured creditor, knocking their

10    claim down.   Within the next 12 months we antici-

11    pate having Fifth Third out of this proceeding

12    and then essentially we're dealing with the

13    general unsecured creditors.

14          The other secured creditors have

15    mortgages and notes and we're going to pay those

16    per the plan in accordance with the terms of

17    mortgages and notes which don't mature till 2035.

18          MR. SHAPIRO:   Judge --

19          THE COURT:   Response?

20          MR. SHAPIRO:   In response, your Honor,

21    counsel is basically asking for two bites out of

22    the same apple.   Mr. Gunnert was represented here

23    previously.   Mr. Elsworth was in court.   The

24    transcript -- and counsel will acknowledge this.

25    I know your Honor has not read the transcript

1    yet.   But counsel will acknowledge he did not ask

2    for any time to file a response to my motion, he

3    did not file any objection to the timeliness of

4    the motion.

5            This plan that is on file, your Honor,

6    still is a loser.   It still impairs my client.

7    My client's debt is stated at the last hearing

8    and which is in the transcript.   My client's debt

9    was fully matured in June of 2002.   There is

10   basically no money in this plan.   There's no

11   money from a third source, there's no money from

12   the income flow of this property.   There is no

13   money in this plan.

14           Counsel has talked about leases that

15   are possibly pending.   This is information that

16   could have been presented to the Court, possibly,

17   the last time we were in court.

18           There was also no request for a

19   continuance because of counsel or Mr. Gunnert

20   supposedly being in the process of obtaining

21   appraisals on the property.   The appraisals

22   counsel has and the appraisals I have which were

23   obtained by my client, Fifth Third Bank, there's

24   a very large discrepancy between them.

25           THE COURT:   Then why don't we have an

1    evidentiary hearing?  If there's a big discrep-

2    ancy, why don't we hear from the appraiser?

3    Rather than just going back and forth about the

4    validity, let me hear him.

5              MR. SHAPIRO:  Judge, with regard to the

6    property, the property --

7              THE COURT:  I mean, I enjoy listening

8    to counsel, but when it comes to evidence I need

9    to assess it.

10             MR. SHAPIRO:  Judge, with regard --

11             THE COURT:  Bring him in, because it is

12   a crucial issue.  Let me hear it.

13             MR. SHAPIRO:  Judge, again, what I'm

14   trying to point out --

15             THE COURT:  I appreciate you all

16   comments, but they're more in the nature of

17   impeachment.  But I haven't heard any evidence

18   yet.

19             MR. SHAPIRO:  Judge, I don't think -- I

20   think the time for hearing evidence came and went

21   on the date of the hearing that we had when --

22             THE COURT:  Counsel brought up an

23   interesting point.  He said that when you filed

24   the motion and it was heard on short notice you

25   should have made a motion.  Or was it he should

1    have made a motion --

2              MR. SHAPIRO:  He said --

3              THE COURT:   -- to have the notice

4    shortened?

5              MR. SHAPIRO:  I did not do that, your

6    Honor.

7              THE COURT:  All right, go ahead.

8              MR. SHAPIRO:  Your Honor, there was a

9    full hearing on that date.  On that date your

10   Honor found -- and it's included in the

11   transcript -- that this plan was illusory, the

12   first plan that was filed.  This plan does

13   nothing more than that.  It's the same thing.

14   There is no money in this estate.  The only money

15   that can be garnered is by selling the asset

16   which is -- my client has a lien on the entire

17   property.

18              The reason that I brought a motion to

19   convert instead of a motion to modify stay with a

20   fully matured debt was because I thought it was

21   in the best interest of all creditors, all

22   creditors that this property be liquidated as

23   soon as possible.

24              As I pointed out to the Court

25   previously, over the course of years Mr. Gunnert

1    had an occupancy permit for the six units that

2    were finished back in 2001 and yet never rented

3    any of the units.  He had a broker and had

4    several contracts for sale of the properties, the

5    six units, various portions of the property, and

6    there was never a closing that took place.  My

7    client had consented to a conversion of the

8    property to condominiums and no one ever asked me

9    or my client for a payoff letter.  No closings

10    ever took place.

11         With regard to the hearing that took

12    place on November 16th, when this -- when your

13    Honor entered an order converting this to a

14    Chapter 7, counsel and his client had two

15    contracts in court on that date.  The contracts

16    that are attached to my client's motion are two

17    other contracts.

18         The gist of my whole argument today,

19    your Honor, is the fact that on our -- is the

20    fact that on November 16th there was a full

21    hearing.  Everything took place on that date.

22    Your Honor ruled on that date.  And I think that

23    the motion from November 16th should be

24    sustained, this case should still remain a

25    Chapter 7 because it's in the best interest of

1    all creditors that this property be liquidated as

2    fast as possible.

3              And Mr. Gunnert has a history of not

4    following through or liquidating anything.

5              MR. JAMISON:  That's not true, your

6    Honor.

7              MR. SHAPIRO:  He's been rehabbing these

8    properties since the year 1999.  We have a

9    matured loan from June of 2002.  We've had fore-

10   closure litigation that was pending in state

11   court since 2002 that was stayed as a result of

12   this Chapter --

13             THE COURT:  What stage is the

14   foreclosure litigation in?

15             MR. SHAPIRO:  There was a judgment that

16   was vacated, your Honor, in June of 2005, and --

17             THE COURT:  Why was it vacated?  Do you

18   know?

19             MR. SHAPIRO:  Yes, I do know.  I was

20   there, your Honor.

21             Mr. Gunnert at that time, after he had

22   had five prior counsel, presented a pro se

23   motion.  Judge Bush vacated the judgment of

24   foreclosure and admonished Mr. Gunnert to be back

25   in court in two weeks with a plan as to how the

1    bank was going to be paid in an expeditious

2    manner.  I asked the Court at that time who his

3    counsel was who couldn't be present in court that

4    day.  He indicated that his name was John

5    Elsworth.  I indicated to the Court that John

6    Elsworth was a bankruptcy attorney.  I came back

7    to court two weeks later and the case was stayed

8    because Mr. Gunnert had filed his Chapter 11.

9            Since the filing of this Chapter 11, it

10   took until November before there was a plan

11   filed.  There had been nothing done with regard

12   to retaining a broker until several months after

13   the plan was filed.  Your Honor had set this

14   matter over for a status call to November 16th of

15   2005, and that is the reason that I had my motion

16   presented on that date.  And the reason why there

17   wasn't 20 days' notice with regard to my motion

18   was because Mr. Gunnert's plan wasn't filed until

19   shortly before the status hearing date.

20           And for all of those reasons, your

21   Honor, I think that the motion should be denied

22   and this matter should stay in a Chapter 7

23   because it's in the best interest of all

24   creditors that this property be liquidated as

25   expeditiously as possible so that my client is

1   paid and other creditors are paid in full, and

2   whatever excess proceeds there may be, if any,

3   would be going to Mr. Gunnert.

4          The trustee has already indicated

5   previously --

6          THE COURT:  You told me that the

7   judgment for foreclosure was vacated.  You didn't

8   tell me why.

9          MR. SHAPIRO:  Mr. Gunnert presented a

10  pro se motion  --

11         THE COURT:  What was his basis?  Why

12  was it vacated, if you know?

13         MR. SHAPIRO:  There was not an opinion

14  written by the Court, your Honor.

15         THE COURT:  Was there any reason?  I

16  mean, something must have happened.  I'm just

17  trying to figure out what's going on.

18         I'm sorry.  Mr. Jamison, are you

19  finished with your motion?

20         MR. JAMISON:  May I respond, your

21  Honor, to some of his allegations, please?

22         And one is that he said there's no

23  money to fund this plan.  And, your Honor, as I

24  expressed before, this is a sole proprietorship.

25  It's not a corporation.  Mr. Gunnert is a

1    licensed appraiser.  Part of funding his plan is

2    his income.  So we'll use his income to help fund

3    this plan.  We have legitimate leases from viable

4    corporate entities who want to lease this

5    property, and they're ready to start January 1st.

6    We have contracts for sale dated January 16th.

7              THE COURT:  What happened with the

8    foreclosure?  Does anybody know what happened?

9              MR. JAMISON:  It was my understanding,

10   your Honor, that there was a motion for summary

11   judgment that had previously been granted.

12   Apparently, Mr. Gunnert filed a motion and the

13   Court said there is a genuine issue of material

14   fact and they cannot go forward on a motion for

15   summary judgment and vacated it.

16             THE COURT:  So there had been a default

17   judgment entered previously?

18             MR. SHAPIRO:  No.

19             MR. JAMISON:  A summary judgment.

20             MR. SHAPIRO:  It was a motion for

21   summary --

22             THE COURT:  Oh, for summary judgment.

23   All right.

24             Anything further, Mr. Jamison?

25             MR. JAMISON:  With regards, your Honor,

1    we would implore the Court to in this case use

2    its equitable powers, your Honor.   This is a rare

3    situation where we have a sole proprietor whose

4    personal residence is at risk in this bankruptcy

5    proceeding where we have assets that are suffi-

6    cient to pay off this creditor.   And we would

7    be -- and our plan would propose 12 months to

8    sell these units.   January 16th is right around

9    the corner.   At a minimum, if we could put it

10   beyond that point, see whether these properties

11   sell.

12           THE COURT:   But he told me the debtor

13   has been promising to sell these properties for

14   more than a year or so.

15           MR. JAMISON:   Well, I can do two

16   things, one of two things I see, your Honor.

17           THE COURT:   I mean, if that's it, if

18   that's what has been going on and nothing has

19   been happening, what's to say it's going to

20   change?

21           MR. JAMISON:   Your Honor, one thing I

22   can say, first of all, is that what brings

23   most -- what brings entities to bankruptcy is

24   because they're hard on financial times.   That

25   happens to be the case in this situation.   He's

1    got --

2             THE COURT:  Well, maybe the plan is not

3    realistic.

4             MR. JAMISON:  I have put together

5    investors that are seeking to do it.  He came to

6    my office, and I have viable investors, your

7    Honor.

8             Now, with regard to the two that he has

9    pending, these were listed with brokers, so we've

10   got these two scheduled to close on January 16th.

11   We're only looking for a couple of weeks.

12            But I've brought investors in, too,

13   that would just buy the units as the four units

14   solid.  They're not looking at a partial amount

15   going to individual units.  I'd like to have an

16   opportunity to see if we can consummate that

17   transaction.

18            And I want to remind the Court this is

19   a 100 percent plan.  No one is taking -- we're

20   not cramming down on anyone.  No general un-

21   secureds are not getting paid in full.  It's a

22   100 percent plan.

23            And it's a short leash.  We're only

24   asking for 12 months to consummate and at least

25   pay off the secured creditors.  And with regards

1     to all the other creditors, we will pay off -- we

2     want 12 months to pay off this secured

3     creditor -- let me qualify that -- Fifth Third

4     Bank.   The other secured creditors will be paid

5     in accordance with the terms of the notes and

6     mortgages signed by Mr. Gunnert with them

7     originally.

8              With regards to the general unsecured,

9     once we sell the sixth unit we've still got the

10    other unit that's pending.   We're selling those

11    units as well.   And the sale of actually one of

12    those units would be sufficient to pay off the

13    general unsecured in its entirety.   Mr. Gunnert

14    would be left after paying 100 percent of all his

15    creditors with his commercial property and also

16    eight units within which he could do what he

17    pleases because all of his creditors would have

18    been paid.

19             Your Honor, it would just be a travesty

20    for Mr. Gunnert to lose all of his properties'

21    investment that he's worked so hard to put

22    together, he got these properties together, when

23    he's in a position to actually pay off his

24    creditors.

25             I take issue with the fact -- it

1    doesn't -- I'm not concerned with the fact that

2    he litigated in state court.   And the judge

3    vacated.   The judge vacated for a reason.   The

4    judge saw that this man deserved an opportunity

5    to respond to whatever allegations there were on

6    summary judgment, and the judge said no.

7              THE COURT:   All right.   Anything

8    further?

9              MR. SHAPIRO:   Well, Judge --

10             THE COURT:   Anything further, Mr.

11   Jamison?

12             MR. JAMISON:   No.   Your Honor.   That's

13   it.

14             MR. SHAPIRO:   Judge, we still have the

15   situation where my client is impaired, we have

16   the situation where there were contracts before

17   over two years ago.   We have a situation where

18   your Honor ordered that the listing agreement

19   only be good for 45 days, which was to the status

20   date when this was last up when my motion was

21   presented to the Court.   And there's actually no

22   authority for them to go forward with the broker

23   at this juncture because the broker -- the list-

24   ing agreement was supposed to expire on the

25   status hearing date.

1          Mr. Elsworth had originally come to

2     court and had a listing agreement for approxi-

3     mately six months.  I was supposed to get a

4     revised listing agreement showing that that

5     listing agreement expired on November 16th.  I

6     indicated to the Court at that time that I never

7     received that agreement.  Mr. Elsworth told me

8     that I did get the agreement, I received it

9     previously.  But that was the listing agreement

10    for six months, not for any 45-day period which

11    expired on November 16th.

12          We still have the same situation, your

13    Honor, that my client is impaired.  We have a

14    fully matured debt, we have a situation where Mr.

15    Gunnert in the past has not liquidated any of the

16    collateral timely with regard to listing it with

17    a broker previously.  I see no reason why that

18    will be done now.  And I feel that under the

19    circumstances that this plan is still illusory.

20    There is no cash.  The Court denied use of cash

21    collateral previously.  And with my client being

22    impaired because we have to wait 12 more months

23    until this property is supposedly going to be

24    liquidated that this motion should be denied.

25          MR. JAMISON:  Your Honor, I object to

1  that.  We did not say 12 months before they would

2  receive any funds, we said in the next 4 to 16

3  days, January 16th, we would be turning over

4  approximately $2,200 or $50,000.

5           MS. SILVER:  Your Honor, I just want to

6  note for the record --

7           THE COURT:  Miss Silver, go right

8  ahead.

9           MS. SILVER:  -- that there is no motion

10 to sell pending, and debtor is not authorized

11 under either Chapter to sell that property with-

12 out Court approval.  If they have a closing

13 scheduled for January 16th they are pushing the

14 deadline on 20 days' notice for sale.

15          THE COURT:  What is your position on

16 the motion to vacate?

17          MS. SILVER:  I've read the transcript.

18 Mr. Friedman represented our office at the last

19 hearing.  And I have not seen anything that would

20 change our office's position.  We supported the

21 motion to convert, and I don't see a reason to

22 alter that order at this point.

23          MR. JAMISON:  May I respond to that,

24 your Honor?

25          THE COURT:  Very quickly.

1          MR. JAMISON:  I'm a bit perplexed by

2    the trustee's position that they see nothing

3    additional.  The original motion filed by counsel

4    only listed the value of my client's property at

5    about $470,000.  The appraisals that we tendered

6    to the trustee's office list the value of the

7    property at $810,000.  I think that's a

8    substantial change if they take that into

9    consideration.  And it also provides the moving

10   party with an equity cushion that he otherwise

11   wouldn't have based on his appraisal that he

12   submitted to the Court.

13          MR. NEWMAN:  Your Honor, Norm Newman.

14          THE COURT:  Mr. Newman, go ahead.

15          MR. NEWMAN:  I reiterate what I said at

16   the last hearing, which is that even if the case

17   remains in Chapter 7 I recognize that there is a

18   potential that this would be a surplus estate and

19   that Mr. Gunnert could get significant funds

20   back.  And that with respect to the issue about

21   that I would be selling his personal residence

22   and throwing him out on the street, I said to the

23   Court that my first order of business here would

24   be to try to find buyers for the investment

25   property and get -- if we get sufficient funds to

1    pay off all the debt, then at that point the case

2    could then be dismissed and I would not sell Mr.

3    Gunnert's residence except that --

4              THE COURT:   Well, the real issue here

5    is whether you're going to sell the property or

6    the debtor.

7              MR. NEWMAN:   Yeah.

8              And in the context -- and, speaking of

9    investors, these parties could submit their

10   offers to me to buy the units, I could come into

11   court to sell.   If Mr. Jamison has an investor

12   group that wants to buy units, they could put --

13   bring the offer to me, we could all talk, the

14   debtor, the bank and myself.   And if these offers

15   make sense for everyone, then I would bring them

16   to the Court to approve the sales.   And basically

17   it would be putting me in the middle of the bank

18   and Mr. Gunnert, who, obviously, are not seeing

19   eye-to-eye here.

20             So, again, I don't see any -- it's not

21   so terrible that the case is in Chapter 7 if the

22   values are what Mr. Gunnert says they are.

23             MR. JAMISON:   Your Honor --

24             THE COURT:   Go ahead.

25             MR. JAMISON:   -- obviously, he said

1    whatever surplus we have.  There's been a

2    petition filed for $17,000 from his prior

3    counsel.  We're not looking -- I mean, Mr.

4    Gunnert is not looking to pay unnecessary fees if

5    he could administer it himself and get this

6    accomplished, your Honor, which we're confident

7    that we can do.

8         I think after January we'll be in a

9    better light because with regard to the motion to

10   sell, obviously, we know we have to get a motion

11   on file.  We need to know where we're going with

12   this case and those contracts --

13        THE COURT:  Well, if you'd had it on

14   file --

15        MR. JAMISON:  Well, your Honor, the

16   contracts were entered subject to court approval

17   on each contract, so they know that there is no

18   deal without this Court's approval.  And we made

19   it that way.

20        THE COURT:  I notice that the debtor's

21   motion to vacate also in the alternative asks to

22   dismiss the Chapter 11.

23        MR. JAMISON:  That's correct, Judge.

24        THE COURT:  Any objection to that?

25        MR. SHAPIRO:  Yes, your Honor, we

1   object to that.  We feel that it would be in the

2   best interest of my client and in the best

3   interest of all creditors that this property be

4   liquidated as quickly as possible through the

5   bankruptcy proceeding.  Mr. Gunnert --

6            THE COURT:  Rather than going through

7   foreclosure without a bankruptcy at all?

8            MR. SHAPIRO:  Correct, Judge.

9            At this stage, your Honor, we feel the

10  fastest way to liquidate the property is through

11  the Chapter 7 trustee.  Because if we go back to

12  state court we have to go back and re-present a

13  new motion for summary judgment or get a trial,

14  one or the other, and it could be many, many

15  months before the property is liquidated.

16           Mr. Gunnert chose and elected to file

17  this Chapter 11, and under the circumstances it

18  is in the best interest of creditors that this

19  matter be converted.  The monthly reports that

20  were filed that I indicated to the Court I had

21  for every month but September indicate that there

22  is no income for this property.  The only way

23  that this matter can be resolved is if the

24  property is sold.  I question whether or not any

25  units will be sold or if all the units will be

1    sold.  But under any circumstances my client is

2    impaired because they have to wait another 12

3    months, possibly, until we get paid.  That's what

4    they're asking for in their plan.

5              MR. JAMISON:  With regards to

6    dismissal, your Honor, I would expect counsel to

7    object.  The order of foreclosure was vacated by

8    the Court.  The Courts thought that he deserved a

9    chance to respond to them.

10             They don't want to have to file a

11   motion in response that they may very well lose.

12   He's assuming that he's going to prevail on it.

13   The judge may find that there were some

14   deficiencies in the original complaint and have

15   to start all over.

16             I know they don't want to go back to

17   state court and actually try to litigate this

18   thing.  But expediency is not the only issue

19   here.  We can present a feasible plan, your

20   Honor, that addresses everyone's concerns.  We're

21   asking for a limited opportunity.  This isn't a

22   long plan.  A limited opportunity.

23             I cannot address what his prior counsel

24   does -- did, and I'm not going to attempt to do

25   that, your Honor.  All I can say is that when

1    they bring a motion they have a burden, and I

2    don't believe they met their burden on diminution

3    in value.  If that's the basis on which they're

4    trying to convert this case they have to say more

5    than just there's a diminution in value.  They

6    have to show how there's a diminution.

7            They didn't do that.  We gave

8    appraisals because, obviously, there's an issue

9    as to valuation here, and I would agree with the

10   Court that we need, possibly, an evidentiary

11   hearing on that matter.

12           But, your Honor, we would submit to the

13   Court that this plan is feasible, that it can

14   be -- this case can be reorganized successfully

15   and these debtors can be paid at 100 percent --

16   these creditors can be paid at 100 percent.

17           MR. SHAPIRO:  Judge, there was no

18   argument about --

19           THE COURT:  Go right ahead.

20           MR. SHAPIRO:  -- diminution in value.

21   What was argued was that the plan was illusory.

22   And what was also argued was is that my client is

23   impaired.

24           THE COURT:  Right.

25           I'm going to pass the matter.  I'm

1    going to at least scan this transcript.  I

2    haven't seen it, since it was just obtained this

3    morning.

4              Does anyone have a copy for me?

5              MR. SHAPIRO:  I have a copy, if I

6    could --

7              THE COURT:  All right.  I'll pass this

8    matter.

9              MR. SHAPIRO:  Okay.  Thank you.

10             MR. NEWMAN:  Your Honor, I may be in a

11   different courtroom --

12             THE COURT:  I understand.

13             MS. SILVER:  -- handling matters.  I'll

14   come back if I can be here.

15             Thank you.

16             THE COURT:  I'll pass it.  Let me

17   finish the rest of my call, and then I'll get

18   back to you.

19             MR. JAMISON:  Your Honor, do you have

20   any idea how long it would be?  I have another --

21             THE COURT:  I have no idea.

22             MR. JAMISON:  -- court appearance to --

23             THE COURT:  I have no idea.

24             MR. JAMISON:  Okay.  Thank you, Judge.

25             THE COURT:  I passed it.

```
 1              MR. JAMISON:  Okay.  Thank you.

 2                   (Whereupon other matters were

 3                   heard on the call and the

 4                   following further proceedings

 5                   were had herein:)

 6              THE CLERK:  An original motion from

 7    9:30, John Gunnert, 05 B 25498.

 8              MR. SHAPIRO:  Good morning again, your

 9    Honor.  Gerald Shapiro on behalf of Fifth Third

10    Bank.

11              MR. JAMISON:  Good morning, your Honor.

12    William Jamison on behalf of the debtor, John

13    Gunnert, who is present here with me today.

14              MS. SILVER:  Gretchen Silver from the

15    U.S. Trustee's Office.

16              MR. NEWMAN:  And Norm Newman, Interim

17    Chapter 7 Trustee.

18              MR. SHAPIRO:  Your Honor, I just wanted

19    to apologize to the Court.  I thought I had left

20    some of my documents in the transcript that I

21    handed up to your Honor to review, and that's why

22    I --

23              THE COURT:  Well, you discussed it with

24    my clerk, and that's who you're supposed to

25    discuss it with.
```

1          MR. SHAPIRO:   Well, I apologize to the
2     Court, your Honor.   I did look through it and I
3     found them.
4          Your Honor, I just wanted to mention a
5     couple of things so that it's clearly in the
6     record, if I could.
7          THE COURT:   Go right ahead.   I'm
8     listening.
9          MR. SHAPIRO:   With regard to this
10     matter, the original Chapter 11 was filed on June
11     28th.   The plan was ordered to be filed by the
12     Court by November 8th and was filed by Mr.
13     Elsworth on November 7th.   My motion was filed on
14     November 8th, one day after the plan was filed,
15     and it was scheduled for hearing on November 16th
16     because that date had already been scheduled by
17     the Court for a status date with regard to the
18     listing agreement and with regard to any
19     contracts for sale of the property.
20          With regard to my client's balance, my
21     client's balance as of today's date, your Honor,
22     is $782,994.59 plus attorney's fees which have
23     accrued after December 13th which are not in my
24     billing system yet and interest which is accruing
25     at $208.10 per day.

1              The reason a claim has not been filed,

2      your Honor, is because the claim deadline was

3      December 27th and this matter was converted to a

4      Chapter 7 on November 16th, so that that claim,

5      that line for the Chapter 11 was moot, and at

6      some point in time, assuming that the Chapter 7

7      remains in effect, I will be filing a claim on

8      behalf of Fifth Third Bank.

9              That claim amount varies because this

10     interest is based on a floating rate and the

11     interest rate varies as the interest rate has

12     increased because of prime increasing recently.

13             With regard to diminution of value,

14     your Honor, the Court generally looks to post

15     petition cash flow.  And in this instance, as I

16     pointed out to the Court, there is no cash flow

17     from this property whatsoever.

18             Based on all of those things and the

19     arguments that I made before that this plan is

20     illusory and my client is impaired because

21     there's another 12 months to be spent pursuant to

22     the plan for these properties to be sold and we

23     have a fully matured debt, I again reiterate what

24     I stated before, that I believe that this motion

25     should be denied.

1            THE COURT:  Anything further from any-

2    one else?

3            MR. JAMISON:  Your Honor, just with

4    regards to the plan that we have on file,

5    obviously, I haven't seen anything.  It's not

6    because I'm doubting counsel's veracity, but

7    we'll review (indiscernible) may very well be

8    objecting to it.

9            With regards to his comment on

10   diminution of value, I would just reiterate to

11   the Court that in the case of In re Richmond

12   Ready Mix Corp., 37 BR 456, the Court held that:

13   It has further been held by the Court that

14   continuing loss of diminution in value of the

15   estate may be tolerated where reorganization is

16   feasible and a pattern of unprofitable operations

17   can be reversed as a result of a successful

18   reorganization."

19           We have leases that are prepared for

20   execution, your Honor, from two corporations that

21   will come in and begin leasing the commercial

22   units.  That's $3,000 a month rent that they will

23   be paying.

24           This is a sole proprietorship.  Mr.

25   Gunnert will be using his personal income in

1    addition to that in funding this plan.  And the

2    other units are just we intend to sell those

3    outright to pay off Fifth Third.  So notwith-

4    standing his comment that post petition is what

5    the Court can look at, there is case law that

6    says that we can go beyond that.

7            MR. SHAPIRO:  Judge, a short reply.

8            All of these matters are things, other

9    than these new leases and the new contracts, are

10   things that could have been obtained at the time

11   of the hearing or should have been obtained at

12   the time of the hearing on November 16th.  There

13   was nothing that would have prevented Mr. Gunnert

14   or his counsel on November 16th from having

15   appraisals available at that time, objecting to

16   the hearing and not wanting to go ahead with it

17   at that time or asking for time to file a written

18   response to my motion.  None of that was done and

19   a full hearing took place.

20           THE COURT:  Anything further, Miss

21   Silver?

22           MS. SILVER:  Nothing further.

23           MR. NEWMAN:  Nothing.

24           THE COURT:  All right.  I'm going to

25   deny the debtor's motion to vacate.  Issues

1    involving timeliness can be waived.  The problem

2    is that nothing was said, as far as I can tell,

3    and nobody points anything out in the transcript

4    indicating that the debtor objected to having the

5    hearing proceed on the 16th.  The debtor did not

6    ask for time to do anything else.

7         The main case supporting this is a 2004

8    U.S. Supreme Court case.  In fact, it came out of

9    this Bankruptcy Court, Judge Schwartz.  When a

10   debtor does not assert their time limit rights

11   they waive them.

12        The motion to vacate is denied.  I will

13   leave the matter in a Chapter 7.

14        I think that the problem with the

15   debtor is that I just don't sense or perceive

16   that the debtor is serious about bankruptcy.  And

17   what bothered me most on November 16th was the

18   representation in the plan that the creditors

19   would be paid at confirmation and then there was

20   an about face.  There seems to be this effort to

21   move forward if you can and then when somebody

22   raises an objection you just change positions.

23   It just doesn't -- I just don't get the sense

24   that the debtor is serious about bankruptcy, that

25   he can and will comply with all of the

1    requirements.

2           You have to comply with these creditors

3    when you have to file reports and give them

4    things and get court authorization, file reports

5    with the U.S. Trustee, and it requires a lot.   It

6    has to be totally transparent.  You're talking about

7    other people's property, you're talking about other

8    people's interests.  And to avail yourself of the

9    extraordinary relief that we give you have to make a

10   lot of efforts, and I just don't see you doing that

11          I was stunned by the representation

12   that everybody would be paid at confirmation and

13   then there was like a five-second total about

14   face.  It just lacks good faith.

15          The motion to vacate is denied.

16          MS. SILVER:   Thank you, your Honor.

17          MR. SHAPIRO:   Thank you, your Honor.

18                  (Which were all the

19                   proceedings had in the above-

20                   entitled cause, December 22,

21                   2005, 9:30 a.m.)

22   I, CAROL MATZ, CSR, RPR, DO HEREBY CERTIFY THAT THE

23   FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF

24   PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

25